## ELLIS, by next friend, *v.* GRAY *et al.*

Where a deed, after conveying property in fee simple to two named grantees, further stipulated that the grantor retained and reserved to herself the right to reinvest or dispose of the property as she might think necessary " for the advantage and use " of the grantees: *Held,* that this reservation did not, at most, confer upon the grantor anything but a mere power to sell and reinvest for the benefit of the grantees. *Held,* further, that a subsequent deed from the same grantor, dealing with the same property and undertaking to convey a life-estate to one of the grantees, with remainder over to her children and second remainder over to the other grantee named in the original deed, was not a good execution of such power.

Argued March 15, — Decided April 11, 1900.

Complaint for land. Before Judge Fite. Gordon superior court. February term, 1899.

*J. A. Hood, F. A. Cantrell,* and *W. R. Rankin,* for plaintiffs.
*Starr & Erwin* and *R. J. McCamy,* contra.

COBB, J. Ellis and others brought an action against Gray
and others, trustees of a Methodist church, to recover possession
of a parcel of land. Upon the trial the following facts ap-
peared: Both parties claimed under E. A. Neal. On August
17, 1866, E. A. Neal (evidently then a widow) conveyed the
property in controversy to her two daughters, Indiana E. Neal
and Laura J. Neal, upon a consideration of five dollars and nat-
ural love and affection. The deed recited that the grantees were
"to have and to hold said tract or parcel of land, stock, and
household and kitchen furniture, to them the said Indiana E.
Neal and Laura J. Neal and the heirs of their bodies, together
with all and singular the rights, members, and appurtenances to
the same in any manner belonging, to them and the heirs of
their bodies for their own proper use, benefit, and behoof, forever
in fee simple, except so much as may be necessary of above prop-
erty to pay my present debts, or that I may in future create in
my own name, but not to be subject to the debts existing or
hereafter created by any future husband that I may hereafter
marry, but the right of the possession and free use of all of
the above property I retain to myself in trust for my aforemen-
tioned children, and should I think it necessary, at any future
time, to sell any or all of said property, I retain and reserve to
myself the right to do so, reinvest or dispose of as I may think
necessary for the advantage and use of my said daughters before
named. I also retain and reserve the use of all of the above
property to myself during my natural life, but not for the use
or benefit of any future husband that I may hereafter marry,
nor subject to any of his debts existing at the time of our mar-
riage or created after the marriage. " On May 27, 1878, Mrs.
E. A. Neal executed another paper in the form of a deed, which
purported, in consideration of natural love and affection, to
convey to " Indiana E. Ellis [formerly Neal], and her children
if any she has, . . for and during her natural life, free from
the debts and contracts of her present or future husband, " the
property in controversy ; the deed further reciting that Indiana

E. Ellis was to hold the property "for and during her natural life, and at her death to her child or children then living, in fee simple; and if the said Indiana E. Ellis should die without any child or children surviving her, then and in that event I give and grant said property to my daughter Laura Camp [formerly Neal] in fee simple." On August 13, 1888, Indiana E. Ellis for a valuable consideration conveyed the property in controversy to the defendants. On August 16, 1888, Laura J. Camp for a consideration of five dollars executed and delivered a quitclaim deed to the property in controversy to the defendants. The judge directed the jury to return a verdict in favor of the defendants, and to this ruling the plaintiffs excepted.

Construing the provisions of the deed of 1866 as a whole, the legal effect of that paper was to reserve a life-estate in the property to the grantor and pass the remainder in fee to the grantees, but subject to a trust of which the grantor was the trustee, first, for the purpose of paying the then-existing debts of the grantor; second, for the purpose of paying any future debts which she might create; and third, for the purpose of selling the property, should the grantor see proper to do so, and reinvesting the proceeds for the benefit of the grantees. Subject to these trusts, upon the execution of that paper the title to the estate in remainder created by the deed passed to the grantees. The deed being voluntary, the trust in favor of existing creditors was undoubtedly valid. Whether the trust in favor of future creditors was also valid it is not necessary to determine. The provision authorizing the grantor as trustee for the grantees to sell the property and reinvest the same for their benefit was valid so long as the grantees were persons for whom the law authorized a trust to be created. This trust would be good during their minority and would become executed upon their arrival at majority. But even if the trust had continued after majority, it was limited by the terms of the deed to a power in the trustee to sell and reinvest for the benefit of the grantees. The deed of 1878 was not executed by the grantor for the purpose of paying any debts which she owed, either existing at the date of the deed of 1866 or created thereafter, nor in pursuance of a sale the proceeds of which were to be reinvested for the

benefit of the grantees. On the contrary, this deed was a palpable effort on the part of the grantor to deal with the property as her own and to transfer the entire estate, except an interest that might arise upon a bare contingency, from one of the grantees in the deed of 1866 to the other. It therefore follows that the deed of 1878 was void, except so far as it conveyed the life-estate of the grantor. The grantees in the deed of 1866 acquired a fee-simple interest in remainder in the property in controversy, notwithstanding the deed was made to the daughters "and the heirs of their bodies." Civil Code, § 3085; *Griffin* v. *Stewart,* 101 *Ga.* 722. Upon the death of Mrs. Neal they became the absolute owners of the property. This being so, the defendants acquired the absolute title under the respective deeds of the two daughters.

*Judgment affirmed. All the Justices concurring.*